## SHERWIN–WILLIAMS CO. OF TEXAS v. OFFENHAUSER.

### No. 4060.

Court of Civil Appeals of Texas. Texarkana.

Oct. 3, 1931.

Rehearing Denied Oct. 22, 1931.

King, Mahaffey, Wheeler & Bryson, of Texarkana, Tex., and J. D. Head, of Texarkana, Ark., for appellant.

H. M. Barney and Frank S. Quinn, both of Texarkana, Ark., and Elmer L. Lincoln, of Texarkana, Tex., for appellee.

SELLERS, J.

This suit was brought in the district court of Bowie county by John S. Offenhauser Company against the Sherwin-Williams Company of Texas, alleging, among other things, that plaintiff was a merchant in the city of Texarkana engaged in selling farm supplies and equipment, and also engaged in buying for resale, and selling to its customers an article of commerce known and designated as arsenate of calcium. That the defendant is, and was at the time complained of, a manufacturer and seller of arsenate of calcium having its brand of said article known as "Sherwin-Williams Products Arsenate of Calcium." The petition states, in part, as follows:

"On the 8th day of July, 1929, the plaintiff and defendant in the city of Texarkana, Texas, entered into an executory agreement and

purchase and sale of 650 one-hundred-pound drums of defendant's Arsenate of Calcium, being two carloads thereof, at and for the price and sum of 6 cents per pound, the plaintiff being the purchaser and the defendant the seller, to be delivered to plaintiff at Texarkana and shipment to be subject to plaintiff's notification; one car to be shipped on or before July 31, 1929, and the other car to be shipped on or before August 15, 1929. Said agreement was and is represented by an order signed by the plaintiff dated July 8, 1929, duly accepted by the defendant, a copy of which order is hereto attached marked 'Exhibit A' and made a part of this petition. In the said order the said article is designated by its commonly known name as 'Calcium Arsenate.'

"Thereafter, to-wit, on the 6th day of August, 1929, plaintiff and defendant in the City of Texarkana, Texas, entered into another executory agreement for the purchase by the plaintiff and the sale by the defendant, of an additional amount of 150 drums of Arsenate of Calcium, at the price of Eight Dollars ($8.00) per hundred pounds, to be delivered to the plaintiff at Texarkana, to be shipped to plaintiff in the second car of plaintiff's original order, said agreement being represented by order of this plaintiff of said 6th day of August, 1929, and duly accepted by the defendant, a copy of which order is hereto attached marked 'Exhibit B,' and made a part of this petition. The said article is named and described in said order by its common name of Calcium Arsenate.

"Plaintiff also shows that the said defendant, at the times of said sales to plaintiff, agreed to and did sell its said Arsenate of Calcium to plaintiff under the descriptive name of 'Calcium Arsenate'; that by the use of said descriptive term the defendant covenanted with the plaintiff and obligated itself to him, to furnish to him Arsenate of Calcium of the brand and quality indicated by its descriptive name and of the brand and quality manufactured, sold and dealt in by the defendant and reasonably fit for the purposes for which the defendant sold it and marketable and salable as Arsenate of Calcium.

"Plaintiff states, at the times of the giving of said orders, by representing to the plaintiff that its said arsenate of calcium was an insecticide, and also by knowing that the said Arsenate was bought by the plaintiff as an insecticide, and by knowing that it was so bought to be resold by the plaintiff as such insecticide, and by knowing the purposes for which said arsenate was to be used, the said defendant then and thereby warranted to the plaintiff that the said Arsenate of Calcium so sold to him was an insecticide, and would poison, destroy, control, and kill cotton worms, boll worms, boll weevils, army worms, and other insects damaging to farm and garden plants, and that the said arsenate was rea-

sonably fit for the purposes for which it was intended, and for resale by the plaintiff as such, and that it was free from any remarkable defects and was merchantable. And, in selling the said article to the plaintiff under its descriptive name of Calcium Arsenate the defendant thereby warranted to the plaintiff that the said article was Arsenate of Calcium of the defendant's known brand and quality, and was marketable and salable as such.

"Plaintiff shows that the first car of Arsenate of Calcium so ordered from the defendant was received by plaintiff, and paid for, on July 29, 1929; that the second car so ordered from the defendant, and purporting to be the remainder of plaintiff's said orders, was received by plaintiff on August 8, 1929, and the balance due upon the said orders was on the said date paid by the plaintiff to the defendant.

"Plaintiff alleges and states that the second car received by plaintiff on August 8, 1929, contained 400 drums labeled 'Sherwin-Williams Products Arsenate of Calcium.' But plaintiff shows that either the said drums were mislabeled and did not in fact contain Arsenate of Calcium, or else if the said substance was Arsenate of Calcium, it contained some remarkable defect which rendered it unfit for use and unmerchantable and unsalable as Arsenate of Calcium. Plaintiff shows that upon the receipt of the said second car he sold all of the said shipment except eleven drums to his customers for use by them as an insecticide for the destruction of boll worms, leaf worms, cotton worms, boll weevils, army worms, and other insects damaging to farm and garden plants but that the said substance so received by him from defendant and so sold to his customers, and so represented and labeled as Arsenate of Calcium, was not, in fact, an insecticide, and did not, in fact, when used by his said customers, kill or destroy or poison boll weevils, leaf worms, cotton worms, boll worms, army worms, or other insects damaging to farm and garden plants. That 68 drums of the said substance so sold by the plaintiff to his customers were returned to the plaintiff by his customers, and plaintiff was required to, and did exchange and substitute therefor Arsenate of Calcium of a different brand; that the persons so returning the said 68 drums, and the number of drums returned by each and the date thereof are as follows: (Here follows list.) * * *

"Plaintiff shows that because the said substance so delivered to the plaintiff by the defendant in fulfillment of his said orders was not an insecticide, and because the same was not marketable and was not suitable and fit for the purposes for which intended, and for which it was sold to this plaintiff by the defendant, and for which it was resold by the plaintiff to his customers, the defendant breached its warranty to the plaintiff."

Exhibit A to petition of John S. Offen-hauser, plaintiff, was as follows:

"Order to the Sherwin-Williams Paint Co.

"We hereby order of you the following goods: ·

"650 100-Lb. Drums, Calcium Arsenate—price 6¢ per lb.—f. o. b. Texarkana, Shipment subject to our notification.—one car on or before July 31st, Other car on or before August 15th.

"This order cancels all previous orders.

"John Offenhauser Co.

"By J. S. Offenhauser.

"Accepted by

"The Sherwin-Williams Co.

"By H. D. Becker.

"By M. Camerata."

The defendant's answer consisted of a general demurrer and certain special exceptions and a general denial. The record discloses that the first car of arsenate of calcium was satisfactory and that this controversy is over the contents of the second car which contained 400 drums for which plaintiff paid $2,-700. It is further made to appear that plaintiff sold all of the 400 drums except eleven at retail for the total sum of $4,983. That plaintiff had complaints from all or a major portion of all to whom he sold this article; that some of it was replaced by other brands of arsenate of calcium, and that which was not replaced the plaintiff was unable to collect for because it was worthles as an insecticide for killing army worms and boll weevils on cotton plants. The plaintiff testified, in substance:

· That he was engaged in business in the city of Texarkana, Ark., as a merchant, dealing in arsenate of calcium for sale to his farmer customers as an insecticide for the control of cotton leaf worms and other cotton-destroying insects, and that he was solicited by the defendant to purchase for resale to his trade its Sherwin-Williams brand of calcium arsenate, and that he gave to the defendant two orders for arsenate, the first order being dated July 8, 1929, for 650 100-pound drums at 6 cents per pound, and the second order on August 6, 1929, for 150 drums at $8 per hundredweight. The first order provided that the arsenate should be shipped f. o. b. Texarkana, shipment subject to notification of plaintiff, one car on or before July 31st, and another car on or before August 15th. The second order provided that the 150 drums covered by it should be shipped with the balance of the original order of 650 drums.

The goods are described in the two orders as "Calcium Arsenate." That he was at the time engaged in business under the name of John S. Offenhauser Company, and he himself placed the first order with defendant at defendant's place of business; and the second order was placed by his bookkeeper. Both orders were accepted by defendant. Under said orders he received the two cars; the first one July 22, 1929. Accompanying the shipment was a draft for the sum of $2,400, the purchase price of the car, and that draft was paid at the time the car was delivered to him. The second car was received August 8, 1929, and it was also accompanied by a draft for the purchase price of the car, $2,700. That he had to pay this draft for $2,700 before he could get the second car. He had not seen the arsenate and had no opportunity to examine it when he paid the draft. At the time he gave the orders he did not examine the goods because there were no samples. Since the calcium arsenate was shipped in metallic drums with friction tops, he could not have told what was in the substance after opening the drums unless he had had a chemical analysis made. At the time the drafts were paid the drums were in the car, sealed up.

This arsenate was bought for the purpose of killing cotton infections, cotton worms, and boll weevils. A representative of Sherwin-Williams Company, Mr. Becker, the manager, came to his place of business saying he understood plaintiff handled a good deal of calcium arsenate. He quoted prices, and plaintiff said that he had never used any of defendant's brand. Becker said that defendant company sold all over the South for dusting cotton; that it was good stuff; that plaintiff would be well-pleased with it; that it would be in new drums, and would be salable and merchantable. The price was quoted, and plaintiff went to the Sherwin-Williams office and signed the contract for 650 drums.

The first car was received about July 29, and was sold out to his customers. Second order for an additional 150 drums to be shipped in the second car was given after he had received the first car. At this time plaintiff had seen the drums and some of the arsenate. Labels on drums showed the contents to be "Sherwin-Williams Products Arsenate of Calcium," and also stated that the arsenate was a poison and was "sold for insecticide purposes." Label also contained directions for use of the arsenate upon potatoes and other vegetables, and for dusting cotton for cotton boll weevils.

Plaintiff sold all the 400 drums in the second shipment except 11 drums which are still on hand. He had complaints from the 389 drums he sold. Sixty-eight were brought back, and he substituted other brands (Delta and Niagara) for them. There was a difference in price between the Sherwin-Williams brand and the brand used to replace it. There was a difference of $437. Plaintiff sold the 289 drums for $4,983. That was the retail price, and the stuff cost him $2,700.

Plaintiff has handled calcium arsenate for four years and is familiar with it, has studied chemistry, and has used calcium arsenate on

his farm. It is made and sold as an insecticide to kill any chewing insects. He used ten drums from the second car. Put it on about 50 or 60 acres of cotton early in the morning and late in the evening, and personally saw that it did not have any effect on the army worms. The arsenate did not kill the worms, it made the plant white, but he saw the worms on the plants, eating the leaves of cotton, and it had no effect on the worms. They kept eating. He investigated the field around the 12th or 15th of August.

He does not know of any other purpose for which arsenate of calcium is sold except as an insecticide. The retail market value in August, 1929, increased from 11 cents to 16 cents. He sold the arsenate between the 9th and 16th, and the market value between that time was 11 cents at the beginning and 16 cents at the end.

W. J. Springer testified, in substance, as follows: That he was fire chief of Texarkana, Tex., and also owned a farm close to Index, Miller County, Ark., in Red River bottom; there being 240 acres in the farm, all in cultivation. In 1929 he bought arsenate of calcium-from John S. Offenhauser; the Sherwin-Williams brand, about 25 drums. Doesn't remember just how many he used, but did not use quite all. Applied it to his cotton plants. Started in August, and covered about 200 acres. Put it on practically all of the land that was in cotton, and applied it for worms and boll weevils. The worms and boll weevils were on his cotton plants. He saw the calcium arsenate on the plants, and it wasn't having any effect on the worms. He told his negroes to try it on their crops, and each one tried half of his crop. It did not have any effect. They ate on just the same. Applied the arsenate with what is known as "the Farm-All Duster" and "Four-O Duster." Applied it in the morning mostly, and sometimes on up in the day if the wind wasn't blowing too much. In some cases five applications were made. He had used calcium of arsenate before this and it had killed the boll weevils. This arsenate did not kill them—they ate on just the same. He saw the dusting, and he dusted on the Sherwin-Williams brand in the same manner as the other brands.

William Varner testified:

That he lived in Miller county, Ark., and was plantation overseer for Arthur Dean. Was 26 years old and had been plantation overseer for 5 years. The plantation he runs is a 400-acre plantation. He bought from John S. Offenhauser for the farm some of Sherwin-Williams calcium arsenate in 1929. Got 10 drums. Bought it around the 10th or 12th of August. That was the season for the boll worms. The army worms had begun to work. He applied the arsenate to his cotton plants where the army worms were on them. Put it on the next morning after he had bought it, right after daylight. Used from six to eight pounds to the acre. Put it on while the dew was on. Had a four-row machine and used some sacks also. That he saw the arsenate on the plants. It had no effect whatever upon the worms. It did not kill any worms. That he had previous experience with arsenate of calcium. It takes from 10 to 12 hours to kill the worms. When he got back in the evenings after having dusted the cotton plants in the morning, he could find no results whatever. The worms kept on eating just the same. The worms could be seen eating the leaves while the arsenate was being put on. He did not use all that he bought, but has a part of it now.

He got 10 other drums from Offenhauser in exchange for the Sherwin-Williams arsenate; exchanged for Delta brand. That he applied the Delta brand the same as he had applied the Sherwin-Williams brand; applied it as soon as he got it; put it on in the evening and in the morning could see dead worms. That was from Delta brand. He put the Delta brand on the cotton that he had previously dusted with Sherwin-Williams brand. He exchanged for the different brand because the Sherwin-Williams brand wasn't doing any good. Had bought it to kill army worms, and the worms were eating the leaves after the cotton had Sherwin-Williams brand on it. The Delta brand did kill them. The arsenate was put on the cotton plants under his supervision.

Many other witnesses testified to like experiences in their use of the Sherwin-Williams arsenate of calcium.

The case was tried to a jury, and upon the verdict of the jury the court entered judgment for plaintiff for $8,095, and the defendant appeals.

██ Appellant's first assignment of error complains of the action of the court in refusing at the close of the evidence to instruct the jury to return a verdict in its favor. As we view the pleadings and evidence, we think it has been clearly established that arsenate of calcium has a well-defined meaning in the commercial world. That it is known as an insecticide and is used for the purpose of killing army worms and boll weevils feeding upon cotton plants. That it was known to appellant at the time it sold and delivered the arsenate of calcium in controversy in this case to appellee that it was being sold as an insecticide for resale by the purchaser to his customers for the purpose of killing army worms and boll weevils feeding upon their cotton plants.

██ These facts having been established, we are of the opinion that the legal conclusion necessarily follows that there was an implied warranty by appellant to appellee that the arsenate of calcium was reasonably useful for the purpose for which it was sold. Davis

v. Ferguson Seed Farms (Tex. Civ. App.) 255 S. W. 655.

■ If we are correct in this conclusion, then the only other necessary fact to be established before appellee would be entitled to recover damages was whether the arsenate of calcium was reasonably useful for the purposes for which it was sold, and, the evidence upon this issue being in conflict, the court properly submitted it to the jury; therefore we think that there was no error in refusing to instruct a verdict in favor of appellant.

By appellant's second assignment of error complaint is directed to action of the court in submitting special issues No. 1 to No. 4, inclusive, to the jury. We have concluded that there was no error in submitting these issues to the jury. While issues No. 2 and 3 were possibly uncalled for under the evidence, their submission to the jury could in no way, as we view it, have prejudiced appellant's rights.

■ Complaint is made to special issue No. 5 and the answer thereto, in that it does not submit to the jury a correct measure of damages. Special issue No. 5 is as follows: "What do you find, from a preponderance of the evidence, was the total of the resale price of such calcium arsenate in question sold by plaintiff to defendant?" Answer: "$4,983.-00."

The rule stated in 2 Mechem on Sales, § 1817, is as follows:

"Where the article furnished by the seller is not such in kind, quality, or condition as it was expressly or impliedly warranted to be, the direct and natural loss to the buyer who keeps it is obviously the difference between the value of an article of the kind he was thus entitled to receive and the value of the article which he has in fact received. For this loss he is entitled to compensation. There may, of course, be other losses resulting from the seller's default, and these will be considered later; but the direct and immediate loss will be at least this difference in value.

"For the breach of warranty, then, as to kind, quality or condition, the measure of the buyer's injury will be the difference between the value of an article of the kind warranted and the value of the article actually delivered; and for this difference the buyer may recover damages. If the article delivered is wholly worthless, then the entire value of such an article as this was warranted to be could be recovered."

Applying the rule to the facts of this case, we find that the goods were sold at retail immediately on their arrival, or within a few days thereafter, in the city of Texarkana. That said merchandise was worthless.

Therefore, we think when the jury determined the actual amount the arsenate of calcium sold for on the market in the city of Texarkana, it in that way correctly arrived at the measure of damages in such case allowable.

As bearing upon the issue of damages, we call attention to the case of Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; 24 R. C. L. p. 240.

■ The fact that appellee had not refunded all of the money received for the arsenate of calcium sold by him to the various farmers did not lessen his right to recover against appellant for the total amount of the arsenate of calcium purchased from appellant. Davis v. Ferguson Seed Farms, supra.

■ Without discussing appellant's assignments Nos. 5, 6, 8, 9, and 10, wherein it complains of the court's action in allowing appellant to recover $2,500 as injury to his business and $437 for replacing some of the worthless arsenate of calcium to the farmers and also $175 for making certain investigations, they should be sustained. Such respective items are subject to the objection of being not supported by the evidence, and too remote and speculative to authorize recovery, and to allow the item of $437, in our opinion, would certainly amount to double recovery.

In accordance with the conclusions reached, the judgment of the trial court will be modified so as to allow a recovery by appellee of the sum only of $4,983, and as so modified the judgment will be affirmed.